The clerk will call the next case. 318-0625, Enright, M.H. and Minor, People of the State of Illinois, Abilene, by Justin Nicolosi versus M.H. Towne by Emma Hopkins. Before we begin, I just want to explain to everyone that Justice Litton was not able to participate physically today in the proceedings, but he is participating fully. We'll, of course, listen to the argument here today and participate with us in the ultimate resolution. So with that, Ms. Hopkins, you may proceed. Good morning, Your Honors. I'm going to please the court, counsel. My name is Amber Hopkins-Reed, and I'm with the Office of the State of Colorado Defender here on behalf of the minor, M.H. M.H. was adjudicated delinquent of criminal sexual abuse stemming from an encounter nearly five years prior with his minor cousin, E.D. During the dispositional phase, the court sentenced M.H. to 24 months probation, and M.H. was later required to register under SORA. Ultimately, however, the trial court stated M.H.'s registration requirement pending the outcome of this appeal. Although there are four issues raised in the briefs, I intend on only focusing on issues one and three here today. However, if Your Honors have any questions as to the remaining issues, please feel free to ask. So looking at the first issue, this court should vacate M.H.'s criminal sexual abuse adjudication because the state failed to prove beyond a reasonable doubt that M.H. touched his penis to the vaginal area of E.D. with the intent to sexually gratify either himself or E.D. Alternatively, this court should find that sex offender registration and notification requirements unconstitutional as applied to M.H. because these laws constitute punishment, and the obligation to register is grossly disproportionate to M.H.'s offense. To my first point, the state had to prove beyond a reasonable doubt that any touching that occurred between M.H. and E.D. was for the purpose of sexual gratification. It is our position that the state has failed to meet this burden. The state cannot simply impute the intent that it would normally impute in an adult into the actions of a child. Instead, when evaluating sexual gratification in a minor, courts look to how close the minor is to adulthood, his maturity, whether the contact was under clothing, the length of the contact, and any evidence of arousal. The facts here support that M.H.'s actions were consistent with adolescent curiosity and not sexual gratification. For instance, M.H. specifically stated that he was curious to see a girl naked. Both M.H. and E.D. removed their own clothing and retreated into E.D.'s mom's bedroom. There was no evidence that M.H. had an erect penis or was breathing heavily during the encounter. In fact, E.D. stated that M.H. wasn't able to do anything with his penis during the sexual contact. Further, M.H. did not ejaculate during the encounter, and in E.D.'s own terms, she said that the encounter lasted less than a few moments, or minutes, excuse me. And M.H.'s statements after the encounter, that people feel good about this, indicated that he had heard this behavior from an outside source, but had no understanding of the emotional, psychological, or biological consequences of the act. Do you recall how long it was between the alleged act and the statement that M.H. made about people say this feels good? There's no direct statement. The only timeline that we have is that E.D. said that the encounter lasted less than a few moments, or minutes. But the statement that he made about this is what people do is... It occurred after the sexual contact. But in that, at the same time, okay. So, both of these, his later comments that we're discussing evidence both his immaturity in not understanding these acts, and his curiosity surrounding the acts. As the state even recognized, M.H. was curious. But, his intent did not go beyond that, as the state argues. The record shows that the sexual conduct was alleged to have occurred, and it was a culmination of curiosity. Not some sexual gratification or arousal for M.H. or E.D. It's undisputed that this was an isolated incident. It took several years before it was formally reported, and it's undisputed that that behavior was not repeated, is that correct? Correct, yes. So, the conduct was alleged to have occurred in 2012, and between his social investigation report in 2017, there was no conduct, and there hasn't been any conduct since. But the children still had contact with each other during that time frame? A portion of the time frame, correct. So, looking to my final point. The sex offender registration and notification requirements are unconstitutional, as applied to M.H., because these laws constitute punishment, and the obligation to register is grossly disproportionate to M.H.'s offense. Looking first to the element of punishment, this court has found in Tedder and in Coquillar that SORA constitutes punishment. This sentiment is still upheld in this court's published decision in Chetwinsky. As such, this court should once again find that SORA is punishment. In these cases, the court has found that SORA imposes an affirmative disability on defendants, is traditionally viewed as punishment, and SORA's broad application and harsh liberty restrictions go far beyond a rational relationship to a non-punitive purpose. So, looking at the affirmative disability element, these SORA restrictions are akin to MSR and probation, which have traditionally been viewed as punishment. Here, for example, SORA is even more extensive than these probation conditions. For example, here, M.H.'s probation conditions include things like abiding by all the laws, he has a curfew he has to abide by, he must complete drug testing, attend school, complete counseling, not possess firearms, complete community service, not possess pornography, and obey his caretakers. But on top of all of those types of restrictions, he also has to abide by the obligations of SORA, which include things like registering in person within three days. Can I clarify whether SORA is a requirement of the order of probation, though? Is it required as a condition of the order of probation? Because I've read the order of probation and I don't see it. So, if you look at the post-trial motions, the judgment that's being appealed from here, it is included in the common law record at page C-96. At the bottom, it says that the appellate or that the trial court is staying in his notification of registration, which makes it a part of the order of appeal that's being appealed here. Okay. Is it specifically articulated as a condition of probation, though? That he meets the obligations of SORA? Yes. So it's not addressed at his probation hearing, although section 150-3-5, subsection A, requires. The reason I'm asking that is because Bingham talks about us not having jurisdiction to address an issue. And if SORA is a condition of probation that the court specifically added, then perhaps the jurisdictional issue might be right for our review. So that's the reason I'm asking this question. I do understand that all orders of probation require offenders to be law-abiding, and that dovetails into the statute that you've just cited. He would be required to comply with the separate SORA registration requirements. So the reasons I'm asking those questions is specifically in reference to the Bingham decision. Correct. So looking specifically at the section 150, it doesn't just require the defendant to abide by all laws, including SORA. It puts an affirmative obligation on the trial judge to order SORA. So basically, the defendant is ordered to register under SORA, which would make this decision right under Bingham, because the judge had to order SORA in order to stay SORA, so that it could be before this court on appeal. All right. I appreciate that clarification. I'd also like to address in Bingham the development of the record. Here, I'd like to note that the Illinois Supreme Court, in Bingham, has stated the challenge to address it for the first time on appeal, it must have a developed record. This concern, however, is not jurisdictional, so it doesn't have the same concerns as what we previously addressed. So it doesn't preclude this court from addressing this issue here today. In fact, the court has found in Tether that there was a sufficient appellate record to address an as-applied challenge, and in that record, there was a PSI, a sex offender evaluation, there were pleadings, trial transcripts. So in this case, we have those same types of documents here. So there's an amply developed record here for the court to address the as-applied challenge. This here in the record, you have all the events that led up to what happened between ED when she was between 8 and 10, and MH when he was between 10 and 12. We have the issues that I discussed previously, the issues with regard to sexual gratification, whether sexual gratification was even present, for instance, because he didn't do things like ejaculate, there's no evidence that he had an erect penis, or things like that. Also, there is a sufficient record because this happened more than five years ago when the defendant was charged. The assault alleged occurred in 2012, and he wasn't charged until his adjudicatory hearing was held on March 21, 2018. Are we even certain, or is the record somehow certain that this offense did occur in 2012? I know there is discussion that the victim indicates she was 8, but also says she knows that she was 8 because she thinks she was in 4th grade, and those don't line up. 8-year-olds are usually in 4th grade. Do we really have a year, or even... As you noted, there is testimony that E.D. was either 8 or going from 4th to 5th grade. There's also different accounts as to when there was an intervention that occurred. Basically, what happened is E.D. alleged these events occurred in 2012, based on my reading of the record. Sometime around 2015, she told her mother about these events. The next day, the trial court referred to it as an intervention, which included E.D., E.D.'s mom, M.H.'s mom, M.H., M.H.'s sister, and they all confronted M.H. about what occurred, and he denied it in front of all of them. There's some testimony as no one really knows when that intervention occurred. Also, no one's really able to tell how old M.H. was when this alleged act occurred. There's testimony that he was between 10 and 12 years old. What would be the statute of limitations? I'm not sure you're on it. Good answer. Going back to the constitutionality of the fly challenge, I have previously discussed the affirmative disabilities, but the remaining three issues, I would like to next look at the SOAR being traditionally viewed as punishment. SOAR meets the traditional view as punishment in a case cited in the opening brief. Snyder, which is a Michigan case, defines punishment as the unpleasant consequences on a defendant following the violation of law. SOAR here imposes a multitude of unpleasant consequences that both incapacitate individuals like M.H. and serve as retribution for the offense, and both incapacitation and retribution have historically been seen as the traditional aims of punishment. Looking at the last two elements, in light of SOAR's non-punitive purpose, the scope and substance of the statutory scheme is unreasonably punitive. SOAR restricts all sex offenders, not just dangerous ones. M.H. is simply not the type of person that SOAR's purpose was aimed. M.H.'s sex offender evaluation was in no way used to determine the application of SOAR in this case. His sex offender evaluation said that he was at a low risk of reoffending, and as Justice Wright previously pointed out, there were no new sex offenses between 2012 when the acts were alleged to occur, and 2017 at his dispositional hearing, and to my knowledge, there have not been any new sex offenses alleged since that time. Nonetheless, SOAR requires M.H. to comply with its obligations for at least five years, but up to ten years. And finally, the punishment is disproportionate on M.H. M.H.'s adjudication of delinquency of criminal sexual abuse is considered a Class IV felony. M.H. was then sentenced to 24 months probation, but he could have been sentenced to the Department of Juvenile Justice. M.H. has a low risk of reoffending and a substantial likelihood of rehabilitation. As previously stated, he was 10 to 12 years old when the alleged conduct occurred, and no further sexual offending has occurred. M.H. has been in counseling since his dispositional hearing, and the evidence suggests that the acts here were consistent with adolescent curiosity. Overall, the underlying circumstances of M.H.'s adjudication, along with his sex offender evaluation, suggests that 10 years of registration on top of his probation for 24 months is disproportionate. For all these reasons stated here, and in M.H.'s brief, this Court should either reverse M.H.'s delinquency adjudication outright in Issue 1, remand the case for further proceedings in Issue 2, find that SOAR is unconstitutional as applied to M.H. in Issue 3, vacate M.H.'s probation condition dealing with social media in Issue 4, or remand this case to the Circuit Court for new evidentiary and dispositional hearing in accordance with the State's request in its brief, or grant any other relief this Court deems appropriate. If there are no further questions. I do. I'm sorry. You mentioned Tedder and Kochivar, and there was a third decision about the same time, Watson, I believe. And, of course, in Tedder I was of strong dissent. But Tedder and Kochivar stand for the proposition that at least some members of this Court believe that SOAR is punitive. However, I believe on January 31st, I've only looked at Tedder. I didn't look at Kochivar. I believe our Supreme Court vacated that decision. The mandate has not been issued in that case. Okay. So my question to you was going to be, what precedential effect does it have on us today? And you have anticipated my question very well. I appreciate the level of preparation you bring to the podium here today. So let's assume, just for the sake of argument, that the mandate is going to issue, has issued, before we render a decision. What precedential effect does Tedder and Kochivar have on the issue of whether SOAR is punitive? So looking directly, I believe, well, first of all, I'll say that I believe that Tedder and Kochivar both are self-compelling cases that this Court can rely on. Because the summary order that the Supreme Court issued stated that this Court is directed to vacate those cases in light of them and reevaluate it. So this Court not only has to wait for the mandate, which is issued on March 7th of this year, it also still has to direct, like, vacate. Okay. Okay. So you are cautiously optimistic that once we get the mandate, we will not be changing the substantive impact of our decision. Correct. Okay. I appreciate that answer. Thank you. Thank you. Any other questions? Thank you. Mr. Nicolosi, you may proceed. Good morning, Your Honors. Good morning. In the face of the Court, Counsel, I don't have a whole lot to say on Issue 1. We're playing it in the State's brief. But I just want to remind the Court that the standard of review, when we're talking about the sufficiency of the evidence, is whether any rational prior effect would have found that in this specific case, whether or not the State proved the element of sexual gratification. Well, getting to that, because he's a minor, whether you narrow the time frame that he was maybe 10, that he was closer to 12, but for a minor, there is no presumption. You can't impute sexual gratification because of anything that happened. There has to be some other proof or some other evidence. And what is it that the State has? Well, I have the testimony from the victim here, what the defendant, the minor, said in this case. Right around the time, he said that this is something that everybody does and people do this to feel good. That's why they do this. Clearly, that's what he was doing. And as I acknowledged in my brief, clearly, the event started with some sort of curiosity. He said he wanted to see a girl naked. But clearly, he had other things on his mind, because not only did he want to see the girl naked, but he got her naked himself. He got the victim on the bed and put his penis to her vagina. This is clearly more than just curiosity, as I argued in my brief. And coupling that with his statement of he was hoping this act would feel good because everyone does it because it feels good, I think that was clearly testified to by E.D. The prior fact heard this. Clearly, he saw that this minor had, M.A.G., had more of a frame of mind of what he was doing here and what he wanted to get out of this incident. And that was clearly some sort of gratification. He wanted to feel good. And again, would any rational prior factor found that element? The state argues yes, because based on that testimony from E.D. and the act, all of the isolated things that encompass this act, taking his clothes off, getting her on the bed, these sorts of things. I like the Matthew K., In re, A.J.H., In re, E.R., E. Those cases are pretty similar in nature to this and all those cases. None of that indicated that it was for sexual gratification. In a couple of those cases, they had an expert, but there still needs to be something more, whether or not it's maybe the clothing off and him trying to manipulate her or himself or something being said about whether his breathing changed or whether he was able to do anything with his penis or all those things. There seems to be no indication of that. And a big thing, he didn't tell her not to tell anybody. He didn't say really anything about it, that the door wasn't locked, all of those things. I mean, frankly, the video itself is really very scant with any detail. So, I mean, you think that just this, like you would have almost in maybe an adult scenario that would be imputed, that we can just take those things and say, well, if that's enough, there isn't anything else necessary given his age? Well, Your Honor, you're just asking if I think that that's sufficient, and that is not the question here on appeal. This isn't a retrial. We're not trying an age again. He doesn't get the benefit of a retrial at this stage. There again, and this is why I focused on the standard review, is whether any rational trial factor. Well, that's the question I'm asking you, that is it rational to think that a child, which you don't even have a time frame to indicate how old she was, let alone how old he was, that most likely he was 10, perhaps even under 10. No, I mean, she says she was 8 years old, but she also says she was in 4th or 5th grade. She never says it was day, night, winter, summer, spring, fall. She doesn't say any of that. So when we review it, we are looking at those things, Mr. Nicolosi, and it's not a retrial. But I'm asking, based on what she did say, was that maybe he was 10, maybe. Now, given that, I think there maybe has to be some element, is it possible for him, I mean, can the state say, yeah, we know that he would even be capable of being sexually gratified? Well, the burden of proof here, even though it's a juvenile matter, is beyond a reasonable doubt because it involves a criminal offense. So it's almost as if we have to disregard a presumption of innocence. Innocence being two prongs. Innocence of a child because of the age and the presumption of innocence for any given adult. And so that is what I'm struggling with here. What caused the trial judge to presume that a 10-year-old or 12-year-old, and I know kids are changing, you know, how I was at 10 years of age is different from how my children were. What did the trial judge say that tipped her over the top? I don't remember the specific words of the trial judge. I don't recall. But from what I can presume, based on the record, the only evidence pointing towards this element is what the words of M.H. that he testified. So I don't assume that's what the trial judge used. I don't know for sure. I don't remember. But again, M.H. said he was hoping the act would feel good because this is why everyone does this. This is why people do it to feel good. So the state can only assume that's why the trial judge found that element. Do you think it's fair for us to surmise that his expectations were not fulfilled because the behavior wasn't repeated? Or is that crossing the line for us? Because to me, he said he expected it to feel good, but the behavior was never repeated. Something that feels good is something... I love massages. I go to a therapeutic massage a couple times a month because it feels good. But he didn't repeat this behavior. Would it be fair to us to look at that fact? Well, I don't think you... I think we'd have to speculate a lot to get to that conclusion. He didn't do that with this victim. We don't know what he did with any other girl, boy, anybody at any other time. But I think that would be kind of taking a little bit of a leap. Thank you for your answer. Depart from the record here. But again, people just submit that any rational trial fact based on what M.H. said to E.D. about his intent for committing this act does support that element of criminal sexual abuse and therefore supports the conviction. Moving on to Issue 3 regarding SORA. The State submits right off the top that, as Justice Wright noted during counsel's argument, that the trial judge here did not order M.H. to comply with SORA, to register. And I understand the judge said something on record about staying the order, but there's no order in this record. So in that essence, this case falls right in line with Bingham, as I argued extensively in my brief. This has turned into a collateral consequence of this adjudication here. It has actually been held in the past in the First District in 2008 that even in a juvenile case, registering as a sex offender is a collateral consequence. That's why I argue that Bingham, even though the statutes for adults and juveniles are different, whereas in juveniles it requires a court order to impose SORA, that they're both mandatory by statute. So even though, that's why I argue that this is kind of a distinction without a difference because it's still a collateral consequence of a guilty plea. It's mandatory in both cases. Why would it be considered different just because one statute requires the judge to order that, whereas for an adult it doesn't require an order, but it's still mandatory? The State doesn't think that makes a whole lot of sense. Okay, and if it isn't an obligation, I mean, it's directly related to the result, and the other collateral consequence is completely on the defendant. This is an affirmative obligation that he has to, it says that the judge shall order, the court shall order. So it is something that is a requirement for the court to fulfill as well rather than for the adult where it's just that the defendant has the obligation to register. So there is a direct affirmative obligation in the trial court for this to happen, which normally moves it out of what we see as a collateral consequence, something that really has nothing to do with the proceeding itself. So if this is part of what has to occur in the proceeding itself, whether it is done implicitly or explicitly, does that make a difference? As I argued, it should. In the grand scope it should make a difference, and the Supreme Court hasn't necessarily come up with a decision on a juvenile case regarding Sora and the aftermath of Tedder and Cochabar and all these things, which obviously prompted the defendant's decision. It hasn't made a comment on the things that I was arguing, why I don't believe this should be handled any differently, even though there is that word in the statute, that slight difference in the statute requiring the judge's order. But I think that's kind of aside from the point. I think the point here is that there was no order. So regardless of what it says in the statute, what there needs to be, there wasn't an order in this case. So I think that moves this case directly under Bingham, that this court can't hear this decision or can't consider this issue because this was not ordered by the judge. Was Bingham on probation? I can look. I'm assuming Bingham was not on probation and was not yet on parole with the statutory conditions for parole, mandatory supervised release. And so I'm wondering if being on probation with a condition of probation that is present in this order shall obey all the laws of the United States, et cetera, et cetera, whether the condition of probation with a requirement to obey all laws of the state of Illinois distinguishes us from the situation in Bingham. But I will reread Bingham to see whether there was either an order of probation or conditions of parole. I don't know off the top of my head, sorry. All right. But I think also it needs to be stressed here that the Supreme Court, the Illinois Supreme Court and the U.S. Supreme Court have talked about the difficulty, if not the impossibility, of reviewing the habit-planning challenges for the first time in direct appeal. There's no factual record to support the defendant's claim here that SOAR is unconstitutional as implied. The Supreme Court in Bingham stressed that this has been the case for decades, that the courts have not taken it upon themselves to review these cases on appeal when there is no established factual record to review. There's nothing to review in this case. So the people would stress that this court would fall in line, please, with what the Illinois Supreme Court and the U.S. Supreme Court has held without really any deviation. Counsel, let's do that. Thank you. But finally, regarding the issue of whether or not SOAR is punishment, I'm not going to rehash all that. That has been discussed at length in many recent decisions. The State would simply request that this court coincide with all the decisions in the Illinois Supreme Court up to this point. The Supreme Court has never found that SOAR represents punishment. The Supreme Court has acknowledged that the purpose of SOAR is for the protection of victims of sexual offenses, not punishment of the offenders. So the State would request that this court coincide, that the State's decision here would coincide with those established decisions. With all that, the State would request that this court affirm the adjudication and sentence of R.N.H., and if there are any other questions, I'd be happy to answer them right now. Thank you, Mr. Nicoletti. Ms. Hopkins-Reed? Just quickly, Your Honors. I'd like to start with Issue 1. The State said that the standard reviewed here is the traditional standard. In my opening brief, I argued that the standard here should actually be de novo because there's no issue of credibility here. Even as the facts listed in oral argument and in the briefs were all in these accounts of what happened, that N.H. didn't have an erect penis, he wasn't breathing heavily, that he never ejaculated. We assumed ED statements, so we're asking this court to look at this issue de novo. And the State briefly argued about his later statements that he was wanting us to feel good. I would ask this court to, again, look at Matthew K. as a more egregious case, where they found that the State failed to meet its burden of proof there as the element of sexual gratification. There, the defendant almost manipulated the AL, who is the defendant in that case, into playing a game, as he called it, where he asked everyone else to leave the room and just kept her in the room, where he then performed different sexual acts on her. And the court found in that case that there was no— the State failed to prove beyond a reasonable doubt the element of sexual gratification. And Justice Wright, specifically to answer your question, you asked the State whether the trial court had addressed the element of sexual gratification. I believe—I don't remember if it was in my opening brief or my reply brief, but I specifically note that the trial court did not address the element of sexual gratification at its opening finding. Looking next to the third issue, and whether Bingham applies here, I'd like to highlight that Bingham is statually distinguishable from this case. So Bingham was charged with—excuse me, attempted criminal sexual assault in 1983, which predated the enactment of SORA, and then later in 2014 had his appeal for felony theft, where he was convicted of three years to the Department of Corrections. No probation. Yeah. And then in his appeal was—it triggered a 2012 statute, which required him to retroactively register for SORA. And this case is not like that case. Here, MH, his obligation to register as a sex offender is directly related to his adjudication for criminal sexual abuse. And further, the court—as I previously noted, the court included the stay of SORA at the common law record, page 96, and the sex offender registration was a requirement that the circuit court had to impose on the defendant under the statutory subsection 150-3-file A, which it then stayed. So presumably, it had to order SORA to stay its order on appeal. And finally, I'd like to note that there was some argument by the state that this has traditionally been seen as a collateral consequence. Under DELVALARC, that case defined a direct consequence as— a direct consequence are those consequences affecting the defendant's sentence and other punishments that the circuit court may impose. This looks like—more like MSR than things that this court has traditionally seen as collateral consequences. This is something that this court is specifically required to order here because it's a juvenile. But even if it's not ordered, it's still imposed. So we're asking that this court find that, because the defendant was required to register under SORA, that this court find that it is unconstitutional as applied to him. If there are no further questions, any questions? Thank you very much. Thank you. Thank you both for your arguments here today in this matter. We'll be taking under advisement, as we indicated earlier, Justice Litton will be fully participating. And after—as soon as possible, we will issue a written decision to you. And with that, it stands adjourned. Thank you.